ORIGINAL
b E F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------x

SOBEIDA PENA,

                     Plaintiff,

-against-

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

                     Defendant.

-----------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 10-CV-0986 (FB)

*Appearances*:
*For the Plaintiff*:
CHRISTOPHER J. BOWES, ESQ.
54 Cobblestone Drive
Shoreham, New York 11786

*For the Defendant*:
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
By: JAMES R. CHO, ESQ.
     Assistant United States Attorney
     271 Cadman Plaza East
     Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Plaintiff, Sobeida Pena ("Pena"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act ("the Act"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Pena's motion is granted to the extent that the case is remanded for further proceedings. Consequently, the Commissioner's motion is denied.

I

Pena applied for benefits on February 21, 2008, alleging disability due to major depressive, anxiety-related and seizure disorders. When her application was denied

by a case manager, she requested a hearing before an administrative law judge ("ALJ").

At that hearing, Pena contended that her mental impairments satisfied sections 12.04

("Affective Disorders") and 12.06 ("Anxiety Related Disorders") of the Commissioner's

listing of conclusively disabling impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. She

further argued that, in any event, her impairments prevented her from performing any job

existing in significant numbers in the national economy.

In a decision dated September 25, 2009, the ALJ determined that Pena was not

disabled under the Act. Applying the familiar five-step analysis, *see id.* § 404.1520, he

found that Pena (1) was not engaged in substantial gainful activity; (2) had severe

medically determinable impairments; (3) did not have a listed impairment; (4) did not

retain the residual functional capacity ("RFC") to perform her past relevant work as a

child-care provider and home attendant; but (5) could, given her RFC, age, education and

work experience, perform other jobs in the national economy. The ALJ's full RFC

determination was as follows:

> [T]he claimant has the residual functional capacity to perform
> less than a full range of light work. She can
> lift/carry/push/pull up to 20 pounds occasionally and 10
> pounds frequently, but can do overhead lifting/carry on less
> than an occasional basis. She can stand/walk about six hours
> and sit at least six hours within an eight-hour workday. She
> should avoid balancing, climbing ladders/ropes/scaffolds and
> working around hazards such as unprotected heights and
> moving dangerous machinery. In addition, she is limited to
> simple routine low stress tasks involving no more than
> minimal contact with the general public.

AR at 19.[1]

Both of the ALJ's adverse findings -- i.e., his step-three and step-five determinations -- were based on his review of the medical evidence. With respect to step three, the ALJ concluded that Pena did not satisfy the criteria for either section 12.04 or section 12.06 based primarily on the opinions of Pena's treating psychiatrist, Dr. Xavier SanMiguel. While Dr. SanMiguel opined that his patient had "marked" difficulty in six areas of social functioning -- including "holding a job and avoid being fired" -- he rated her overall social limitations as "mild." AR at 242.[2] He further opined that Pena suffered only mild limitations in her daily activities and had difficulty maintaining concentration, persistence or pace only "at times." *Id.* at 243. Finally, he stated that Pena had not experienced any episodes of decompensation.[3]

In the ALJ's view, Dr. SanMiguel's opinions were confirmed by those of Dr. Hye Lee, a prior treating psychiatrist. Although Dr. Rita Clark, a consulting psychiatrist who testified at the hearing, opined that Pena's "treatment records . . . support a finding

---

[1]"AR" refers to the Administrative Record.

[2]The other areas of "marked" difficulty were "making and getting along with friends," "getting along with strangers," "getting along with others, e.g., neighbors, grocery clerks, bus drivers, co-workers, landlord, etc.," "responding to those in authority" and "interacting and actively participating in group activities." AR at 242.

[3]An "episode of decompensation" is a temporary increase or exacerbation of symptoms that generally requires a "significant alteration in medication," a "more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)," or some other indication that the claimant is unable to cope with the episode. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

that she meets the listing under 12.04," AR at 46, the ALJ gave her opinion "little weight" because it was "not supported by the overall medical evidence." AR at 21.

At step five, the ALJ based his assessment of Pena's physical abilities principally on the opinions of her primary-care physician and another treating physician, Dr. George Cantor, the latter of whom opined that her seizure disorder prevented her from working at a height, or with motor vehicles or other machinery requiring an alert operator. For additional limitations imposed by Pena's mental impairments, the ALJ again considered the opinions of Drs. SanMiguel, Lee and Clark. Relying principally on Dr. Lee's opinion that Pena became anxious around people, he concluded that she was limited to performing "routine low stress tasks involving no more than minimal conduct with the general public." AR at 19. He rejected evidence of more serious limitations -- such as GAF ("Global Assessment of Functioning") scores of 45-50 in 2007 – as inconsistent with Dr Lee's mental status examination and Dr. SanMiguel's more recent GAF score of 70-80.[4]

Finally, the ALJ considered Pena's own description of the severity of her condition, which included claims of weakness, trouble sleeping, twice-weekly seizures and heavy dependence on her son. He concluded, however, that the claims were not supported by the other evidence in the case and, accordingly, found them "not credible to the extent that they are inconsistent with [his] residual functional capacity assessment." AR at 22.

---

[4]A score of 45-50 suggests a "serious impairment in social and occupational functioning," while a score of 70-80 suggests "no more than slight impairment in social or occupational functioning." AR at 21-22.

Pena sought review with the Commissioner's Appeals Council. She was then hospitalized twice, once from December 4, 2009 to December 10, 2009, and again on December 22, 2009. In that same month, she also obtained a note from Dr. SanMiguel opining that she "was unable to work at this time due to [the] severity of her symptoms." AR at 325. The Appeals Council received the new evidence, but nevertheless found "no reason . . . to review the Administrative Law Judge's decision." AR at 1.

The Appeals Council's action rendered the ALJ's decision the final decision of the Commissioner. Pena thereupon timely sought judicial review.

## II

In reviewing a determination of the Commissioner, "a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla," and should be that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations marks and citation omitted).

Pena raises three arguments. First, she argues that the record "persuasively supports the finding" that she satisfied the criteria for a listed impairment under section 12.04 at step three.[5] Second, she argues that her limitations required a finding of disability at step five. Third, she challenges the ALJ's finding that her testimony regarding the

---

[5]Pena does not pursue the argument that she also satisfied the criteria of section 12.06.

5

frequency of her seizures and complaints of weakness were not credible. The Court addresses each argument in turn.

## A. Step Three

Section 12.04 consists of three subsections -- A, B and C. To establish a listed impairment under that section, a claimant must establish *either* the criteria set forth in subsections A and B, *or* the criteria set forth in subsection C. The ALJ apparently took for granted that Pena satisfied the criteria of subsection A, which requires only a medically documented "depressive syndrome" characterized by certain symptoms; Pena does not argue that she satisfies subsection (C). Thus, the Court focuses, as the ALJ did, on subsection (B).

Subsection (B) deals with the functional limitations imposed by a mental impairment. It requires a claimant to show at least two of the following:

1.    Marked restriction of activities of daily living; or

2.    Marked difficulties in maintaining social functioning; or

3.    Marked difficulties in maintaining concentration, persistence, or pace; or

4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B). "Marked" in the first three criteria is a term of art referring to the fourth point of a five-point scale ranging from "none" to "extreme." *Id.* § 404.1520a(c)(4). The fourth criterion requires a claimant to show "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* pt. 404, subpt. P, app. 1, § 12.00(C)(4).

With respect to the first three criteria, the ALJ found that Pena had "mild" difficulty with daily activities, and "moderate" difficulty with social functioning and maintaining concentration, persistence or pace. With respect to the fourth, he found "one to two episodes" of extended decompensation. Under those findings, Pena does not satisfy subsection (B).

As framed, Pena's argument that the record "persuasively supports" a contrary finding that she satisfied a least two of the four criteria is beside the point because the proper standard of review does not ask whether the evidence *could* support certain findings, but rather whether the findings the ALJ *did* make were supported by substantial evidence. *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (substantial evidence standard does not authorize district court to substitute its own judgment for that of ALJ).

The Court concludes that the evidence supporting the ALJ's step-three determination was not substantial for two reasons, both relating to Dr. SanMiguel's report. First, the report was internally inconsistent; Dr. SanMiguel identified six areas in which Pena had "marked" difficulty, yet opined that, overall, her social limitations were only "mild." According to Dr. Clark, anyone with so many difficulties should be considered to have "marked" limitations in social functioning.

The Commissioner's regulations require an ALJ to "seek additional evidence or clarification from [a claimant's] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved." 20 C.F.R. § 404.1512(e)(1). Yet the ALJ did not ask Dr. SanMiguel to resolve the inconsistency in his report. Even if the conflict could be explained away without further clarification – and the Court suspects

7

that it could not – the ALJ was under a separate obligation to "set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). Although he largely complied with that mandate, he failed to even mention, let alone address, the internal inconsistency in the report on which he so heavily relied.

Standing alone, the inconsistency in Dr. SanMiguel's report could arguably be dismissed as harmless because it implicates only one of subsection (B)'s four criteria, while Pena was required to establish at least two. This leads to the second reason the Court cannot uphold the ALJ's step-three determination: Dr. SanMiguel's December 2009 note casts further doubt on *all* aspects of his prior report. While the ALJ cannot be faulted for failing to consider the note – along with evidence of Pena's hospitalizations -- the Appeals Council can.

The Appeals Council must consider "[1] new and [2] material evidence submitted if [3] it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). Such evidence becomes part of the administrative record and must be considered by the district court in its review of the ALJ's decision. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). There is no question that the evidence is new and material; it was created after the ALJ's decision and, as noted, calls into question the continued reliability of a piece of evidence upon which the ALJ relied.

With respect to the third requirement, "the Court must distinguish between new evidence that reflects on the severity of the plaintiff's impairment as it existed during the time for which benefits were denied and new evidence which represents new

impairments which would not have affected the decision below [and for which a new application for benefits must be made]." *Overbaugh v. Astrue*, 2010 WL 1171203, at *10 (N.D.N.Y. Mar. 22, 2010). Without further clarification, however, the Court is not in a position to categorize Dr. SanMiguel's note as one or the other. Therefore, remand is required to allow the ALJ to inquire whether the note reflects a reassessment of the severity of Pena's condition at the time of the ALJ's decision. If it does, the ALJ must consider (and explain) its effect on his step-three determination.

This is not to say that the ALJ must accept Dr. SanMiguel's opinion that Pena is "unable to work" at face value. He is free to inquire into the bases for the opinion and whatever other information he needs to determine whether Dr. SanMiguel is now of the opinion that Pena satisfies the criteria of subsection (B). But until that information is known, a decision that relied so heavily on his prior report cannot stand.

Although Pena's step-three argument provides a sufficient basis for remand, the Court addresses her remaining arguments to provide guidance and avoid, if possible, a second round of judicial review.

## B. Step Five

The ALJ made some allowance for Pena's social limitations in his RFC assessment, but he did not find her unable to perform any work at all at step five. Like his step-three determination, however, his step-five determination relied heavily on the relatively optimistic report of Dr. SanMiguel. Thus, the internal inconsistency discussed above requires a reassessment of the latter step (assuming the ALJ's step-three determination remains adverse to Pena) based on additional evidence or clarification from

9

Dr. SanMiguel. The new evidence requires the ALJ to reassess step five for the same reasons; for example, Dr. SanMiguel may no longer stand by his GAF score of 70-80.

## C. Credibility

The ALJ found Pena's testimony regarding the frequency of her seizures not credible because it was inconsistent with the frequency reported by a treating physician. He found her claims of weakness not credible because they were not reflected in the medical evidence.

Although Pena's physician's description of seizure frequency was ostensibly based on her own self-reports, she points to some treatment notes that suggest a higher frequency. *See, e.g.,* AR at 232 (noting two attacks in one month). As evidence of weakness, she points to notes of mild tremors, which are arguably at least consistent with weakness. The ALJ did not specifically mention any of this evidence.

The Court need not decide whether the ALJ's omissions require remand. *Compare Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (ALJ not required "to explicitly reconcile every conflicting shred of medical testimony"), *with Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("The crucial factors in [and ALJ's] determination must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."). Because the case must be remanded for other reasons, it need only exhort the ALJ to address Pena's contentions on remand.

## III

Pena's motion for judgment on the pleadings is granted to the extent that the case is remanded for further proceedings. It follows that the Commissioner's motion must

be denied. On remand, the ALJ shall take appropriate steps (1) to resolve the internal inconsistency in Dr. SanMiguel's report and (2) to determine the effect of Pena's new evidence on that report.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 31, 2011